**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

EMIL DAVTYAN, ESQ. (SBN-299363)
emil@davtyanlaw.com
**DAVTYAN LAW FIRM, INC.**
880 E. BROADWAY
GLENDALE, CA 91205
TEL: (818) 875-2008, FAX: (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURIY BOUZELEV, an individual, on behalf of himself and others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>THC - ORANGE COUNTY, LLC; and DOES 1 through 50,<br><br>Defendants. | CASE NO.  8:19-cv-01846-DMG-DFM<br><br>[Case Assigned to U.S. District Judge: Dolly M. Gee]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          May 14, 2021<br>Time:          10:00 a.m.<br>Courtroom.:    8C, 8th Floor |

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on May 14, 2021 at 10:00 a.m., in the above-entitled Court located at the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 8C, 8th Floor, Plaintiff YURIY BOUZELEV, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel"), will and hereby does, move this Court for an order granting final approval of a proposed class action settlement. The terms of the settlement are contained within the Parties' Stipulation for Class Action Settlement (the "Stipulation"), which is concurrently submitted as Exhibit A to the Declaration of Kelsey M. Szamet.

This motion will be made on the grounds that the proposed Class Stipulation is fair, adequate, reasonable, and in the best interest of the Class and the Parties. This motion is based on this Notice and accompanying Memorandum of Points and Authorities, the Declarations of Kelsey M. Szamet, Yuriy Bouzelev, Jarrod Salinas, the Settlement, all other papers and records on file in this action, and on such further evidence as may be presented at the hearing.

DATED: April 15, 2021             KINGSLEY & KINGSLEY, APC


By: */s/* Kelsey M. Szamet
_____
KELSEY M. SZAMET
Attorney for Plaintiff YURIY BOUZELEV
and the proposed class

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................1

II.   RELEVANT PROCEDURAL HISTORY ......................................2

III.  SUMMARY OF THE SETTLEMENT'S TERMS.........................3

    A.    FCRA Class...............................................................3

    B.    Monetary Recovery .................................................4

    C.    The Release by FCRA Class Members ..................................5

    D.    The Settlement Administration Process ...............................6

IV.  THE COURT SHOULD ORDER FINAL APPROVAL OF THE SETTLEMENT.................................................................7

    A.    The Strength of Plaintiff's Case ..................................8

    B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ........................................................10

    C.    The Risk of Maintaining Class Action Status Through Trial .............11

    D.    The Amount Offered in Settlement.................................11

    E.    The Extent of Discovery Completed, and the Stage of the Proceedings ..........................................................13

    F.    The Experience and Views of Counsel .............................14

    G.    The Presence of a Governmental Participant ......................15

    H.    The Reaction of the Class Members to the Proposed Settlement .......15

    I.    The Parties Arrived at the Settlement Through Arm's Length Negotiations with the Assistance of a Respected Mediator...............15

V.   THE COURT SHOULD CERTIFY THE FCRA CLASS ...........................16

    A.    Plaintiff Maintains That All Four FRCP 23(a) Criteria are Met.........16

    B.    The FRCP 23(b)(3) Criteria are Met................................19

VI.  ENHANCEMENT TO PLAINTIFF ..............................................21

VII. CONCLUSION................................................................22

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alberto v. GMRI, Inc.*,
  252 F.R.D (E.D. Cal. 2008)..................................................................16

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................7

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...............................................................13

*Collins v. Cargill Meat Solutions Corp.*,
  274 F.R.D. 294 (E.D. Cal. 2011)...........................................................6

*Corcoran v. CVS Health*,
  2019 WL 6250972 (N.D. Cal. Nov. 22, 2019).....................................18

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
  213 F.3d 454 (9th Cir. 2000) ........................................................ 10, 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................... 16, 17, 19, 20

*Hillson v. Kelly Services*,
  E.D. Mich. No. 2:15cv10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) .....12

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................13

*In re Monumental Life Ins. Co.*,
  365 F.3d 408 (5th Cir. 2004) .................................................................9

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...............................................................7

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
  Liabi*lity Litig.,
  229 F. Supp. 3d 1052 (N.D. Cal. 2017)................................................14

*Ingram v. The Coca-Cola Company*,

200 F.R.D. 685 (N.D. Ga 2001) ........................................................................21

*Lengel v. HomeAdvisor, Inc.,*

No. CV 15-2198, 2017 WL 364582 (D. Kan. Jan. 25, 2017) ..............................12

*Linney v. Cellular Alaska P'ship*,

151 F.3d 1234 (9th Cir. 1998) ..........................................................................13

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*

244 F.3d 1152 (9th Cir) ....................................................................... 19, 20, 21

*Milbourne v. JRK Residential Am.*, LLC,

No. 3:12CV861, 2016 WL 1071570 (E.D. Va. Mar. 15, 2016)..........................8

*Molina v. Roskam Bakery Co.*,

No. 09-cv-475, 2011 WL 5979087 (W.D. Mich. Nov. 29, 2011)........................10

*Nunez v. BAE Systems San Diego Ship Repair, Inc.*,

292 F. Supp. 3d 1018 (S.D. Cal. 2017) ......................................................... 14, 15

*Officers for Justice*,

688 F.2d 615 (9th Cir. 1982) ...................................................... 7, 13, 15

*Pac. Enters. Sec. Litig.*,

47 F.3d 373 (9th Cir. 1995) ..........................................................................14

*Phillips Petroleum Co. v. Shutts*,

472 U.S. 797, (1985) ....................................................................................21

*Quezada v. Loan Center of Cal., Inc.*,

2009 WL 5113506 (E.D. Cal. Dec. 18, 2009)...................................................18

*Quintero v. Mulberry Thai Silks, Inc.,*

No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) ............................................................................16

*Ruiz v. Shamrock Foods Co.*,

No. 2:17-cv-6017, 2018 WL 5099509 n.6 (C.D. Cal. Aug. 22, 2018) ...............10

*Schofield v. Delta Air Lines, Inc.*,
  2019 WL 955288 (N.D. Cal. Feb. 27, 2019)...................................................... 18, 19

*Slezak v. City of Palo Alto*,
  2017 WL 2688224 (N.D. Cal. June 22, 2017) ..........................................14

*Smith v. LexisNexis Screening Solutions, Inc.*,
  837 F.3d 604 (6th Cir. 2016) .............................................................8

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...........................................................17

*Syed v. M-I, LLC*,
  853 F.3d 492 (2017) .........................................................................8

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) .............................................................9

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................... 7, 10, 11

*Van Vranken v. Atlantic Richfiled Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995)....................................................21

**Federal Statutes**

15 U.S.C § 1681n(a)(1)...........................................................................8

15 U.S.C. § 1681b...................................................................................6

15 U.S.C. § 1681b(b)(2)(A)(i)............................................................2, 17

15 U.S.C. § 1681b(b)(2)(A)(i)(2) ............................................................2

15 U.S.C. § 1681n...................................................................................11

15 U.S.C. § 1681p....................................................................................9

15 U.S.C. § 1681p(2)...............................................................................9

15 U.S.C. §1681b(b)(2)(A)(i) ..................................................... 2, 11, 12

15 U.S.C. §1681b(b)(2)(A)(ii) ................................................... 2, 11, 12

**State Statutes**

California Business and Professions Code § 17200 ..................................6

**<u>Federal Rules</u>**

Federal Rules of Civul Procedure Rule 23(a)....................................................16

Federal Rules of Civul Procedure Rule 23(a)(1) ..............................................16

Federal Rules of Civul Procedure Rule 23(a)(2) ..............................................16

Federal Rules of Civul Procedure Rule 23(a)(3) ..............................................17

Federal Rules of Civul Procedure Rule 23(a)(4) ..............................................18

Federal Rules of Civul Procedure Rule 23(b)(3)........................................ 16, 19

Federal Rules of Civul Procedure Rule 23(e)...............................................7, 20

Federal Rules of Civul Procedure Rule 23(e)(1)(C)............................................7

**<u>Other Authorities</u>**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed.
    2002)..............................................................................................................7

*4 Newberg on Class Actions* § 11.41 ..............................................................10

*4 Newberg on Class Actions* § 11.41 (4th ed. 2002 & Supp. 2008)........................10

*Glass v. UBS Fin. Servs.,*
    2007 U.S. Dist. LEXIS 8476 at *14 (N.D. Cal. Jan. 27, 2007) ...........................14

*Glass v. UBS Financial Services, Inc.*, Case No. C-06-4068 MMC,
    2007 WL 227862 (N.D. Cal. Jan. 26, 2007) .......................................................21

*Manual for Complex Litigation* § 21.62 .................................................................13

*Manual for Complex Litigation*, Fourth, § 21.6 at 309 (2004).................................7

*Quintero v. Mullbery Thai Skills, Inc.,*
    2008 U.S. Dist. LEXIS 84976, at *8 ................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[1]

Plaintiff YURIY BOUZELEV, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel"), and Defendant THC - ORANGE COUNTY, LLC ("Defendant"), have entered into a proposed class action settlement which would dispose of all claims at issue.

The settlement terms are embodied in the Parties' fully-executed Stipulation for Class Action Settlement (the "Settlement" or "Settlement Agreement"), which is concurrently submitted as Exhibit A to the Declaration of Kelsey M. Szamet at ¶5. ("Szamet Decl.")  Plaintiff now seeks final approval of the Settlement.  Szamet Decl. ¶6.

On January 8, 2021, the Court issued an Order granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement and setting a final approval hearing currently set to be heard before this Court on May 14, 2021. (ECF No. 35.) Szamet Decl. ¶7.

As Plaintiff contends that the Settlement satisfies all relevant standards for being deemed "fair, adequate and reasonable," Plaintiff now asks the Court to: (1) grant final approval of the Settlement Agreement pursuant to the terms of the Settlement; (2) certify the proposed FCRA Class; and (3) enter judgment.

In addition, Plaintiff asks the Court to award attorneys' fees and costs as detailed in the Motion for Attorneys' Fees and Costs that was filed on March 19, 2021; award a class representative payment of $5,000.00 to Plaintiff YURIY BOUZELEV; and award settlement administration costs of $20,000.00 to Simpluris, Inc.

///

---

[1]   Unless otherwise indicated, this motion for Final Approval of the Settlement uses the defined terms in the Stipulation.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

## II.    RELEVANT PROCEDURAL HISTORY

On September 26, 2019, Plaintiff filed a Class Action Complaint against Defendant in United States District Court for the Central District of California – Orange County Division, Case No. 8:19-cv-01846 (Dckt. No. 1 (the "Complaint")). The claims currently pending in the Action include the following: (1) failure to make proper disclosures to obtain proper authorizations in violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681b(b)(2)(A)(i), and (2) failure to obtain valid authorizations before procuring backgrounds checks in violation of the FCRA 15 U.S.C. §§ 1681b(b)(2)(A)(ii). Declaration of Kelsey M. Szamet ("Szamet Decl.") ¶8.  In the Action, Plaintiff contends that during the relevant period, Defendant has had a consistent policy of requiring Plaintiff and all proposed settlement FCRA class members to execute an "Consumer Disclosure and Authorization Form" form ("standard FCRA form") permitting Kroll Background America, Inc. to obtain a consumer report verifying the applicants' background and experience.  (*See* standard FCRA form attached as Exhibit "1" to this Motion.)   Plaintiff contends that by containing extraneous information in its standard FCRA form, Defendant violated 15 U.S.C. §1681b(b)(2)(A)(i)-(ii).

The Parties engaged in extensive discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged. Szamet Decl. ¶9.  On August 24, 2020, the Parties participated in a private mediation session with Tripper Ortman, Esq., a well-regarded and experienced class action mediator. Szamet Decl. ¶10.  As a result of the mediation, the Parties, through counsel, reached and signed a memorandum of understanding which outlined the material terms of a proposed class action settlement that would fully resolve this Action in its entirety, subject to the Parties entering into a more comprehensive written settlement agreement. *Id*.

On September 3, 2020, the Parties jointly filed a notice of settlement. (Dckt. No. 24 (Joint Notice of Settlement)).  Thereafter, on September 8, 2020, the Court

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

issued an order setting Plaintiff's deadline to file his Motion for Preliminary Approval for October 30, 2020 (Dckt. No. 25 (Order re Notice of Settlement)).

On January 8, 2021, this Court heard Plaintiff's motion for preliminary approval of the class action settlement between the Parties. During the hearing on Plaintiff's Preliminary Motion, the Court indicated that it had changes to the proposed Class Notice. (*Id*.)  On January 11, 2021, Plaintiff's Counsel filed a Supplemental Declaration in support Plaintiff's Preliminary Motion, indicating that the Parties made all requested changes to the Class Notice. (*see* ECF Nos. 33- 33-2.) (*Id*.).

On January 8, 2021, the Court granted Plaintiff's motion for preliminary approval of class settlement. Following preliminary approval, the Parties coordinated with the Settlement Administrator to ensure the proper dissemination of the Class Notice and closely monitored the notice process. Szamet Decl. ¶11.

## III.    SUMMARY OF THE SETTLEMENT'S TERMS

The key terms of the Settlement are discussed and summarized below:

A.    <u>FCRA Class</u>

"FCRA Class" or "FCRA Class Members" means all applicants for employment in the United States for whom Defendant THC-Orange County, LLC procured a consumer report for purposes of employment from September 26, 2014 through July 2, 2019, inclusive.  Defendant represents that the FCRA Class contains approximately 3,505 individuals, of which 2,060 were screened between September 26, 2014 and September 25, 2017, inclusive ("5 Year FCRA Sub-Class") and approximately 1,445 persons were screened between September 26, 2017 and July 2, 2019, inclusive ("2 Year FCRA Sub-Class").

*See* Szamet Decl. Exhibit A, Settlement at ¶11.

As of this filing, the FCRA Class includes 3,504 individuals. *See* Jarrod Salinas Decl. ¶11. ("Salinas Decl.")

///

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

B.    <u>Monetary Recovery</u>

The Settlement provides a maximum recovery of $315,450.00 (the "Gross Settlement Amount"). The following estimates the breakdown of payments from the Gross Settlement Amount:

| | |
|---|---|
| **Gross Settlement Fund:** | **$315,450.00** |
| Less Attorneys' Fees | -$105,150.00 |
| Less Litigation Costs | -$ 12,000.00 |
| Less Settlement Administration | -$ 16,200.00 |
| Less Plaintiff Service Awards | -$   5,000.00 |
| **NET SETTLEMENT FUND** | **$177,100.00** |

Settlement at ¶¶19; Salinas Decl. at ¶11.[2]

The proposed Gross Settlement Amount represents 90% of Plaintiff's potential recovery at trial using $100 (3,505 class members x $100 = $350,500) and 9% of the potential recovery using $1,000 (3,505 class members x $1,000 = $3,505,000), with an average gross settlement amount of $90 to each proposed FCRA Class Member.  Szamet Decl. at ¶13.

In recognition of Defendant's potential statute of limitations defense against alleged claims arising from consumer reports that Defendant procured or caused to be procured on FCRA Class Members from September 26, 2014 through September 25, 2017, the Parties agree that a higher percentage of the Net Settlement Amount shall be distributed to the 2 Year FCRA Sub-Class as follows:

Thirty one and three tenths percent (31.3%) of the Net Settlement Amount shall be allocated to alleged claims arising from consumer reports that Defendant procured or caused to be procured on 5 Year FCRA Sub-Class members from September 26, 2014 through September 25, 2017.  The amounts will be allocated pro rata amongst the 5 Year Sub-Class members.  As of this date, a net amount of

---

[2] Note that the Net Settlement Fund is actually understated because Class Counsel's cost reimbursement request is only $10,005. 25.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

approximately $26.91 will be allocated per person.  *See* Declaration of Salinas at ¶11
There are 2,060 Participating Class Members in the 5-Year FCRA Sub-Class. *Id*.

Sixty eight and seven tenths percent (68.7%) of the Net Settlement Amount
shall be allocated to alleged claims arising from consumer reports that Defendant
procured or caused to be procured on 2 Year Sub-Class members from September
26, 2017 through July 2, 2019.  This amount will be allocated pro rata amongst 2
Year Sub-Class members.  As of this date, a net amount of approximately $84.20
will be allocated per person. *See* Declaration of Salinas at ¶11.  There are 1,444
Participating Class Members in the 2-Year FCRA Sub-Class.  *Id*.; Settlement at ¶40.

As this is a non-reversionary, total payout Settlement, any funds remaining in the
Gross Settlement Amount due to uncashed Settlement checks (after a 180-day negotiability
period) will be remitted to Bet Tzedek Legal Services. Settlement at ¶38.  Neither
Plaintiff, nor any member of Plaintiff's Counsel's firm, Kingsley & Kingsley,
APLC, or Davtyan Professional Law Corporation have any present relationship with
Bet Tzedek Legal Services, outside of this settlement. Szamet Decl. ¶14.  THC
similarly does not have any relationship with Bet Tzedek Legal Services.  Littler
Mendelson, P.C. does not have an existing or prior client relationship with Bet
Tzedek Legal Services.  None of THC's attorneys at Littler Mendelson, P.C. who
have defended the Company in this matter have any relationship with Bet Tzedek
Legal Services.

C.    The Release by FCRA Class Members

The release applies only to FCRA Class Members who do not request exclusion.
As of the date of this filing, only one (1) individual has requested exclusion. *see* Salinas
Decl. at ¶9.  As such, the release applies to 3,504 FCRA Class Members.

FCRA Class Members will release Defendant and others "from any and all
claims of any kind whatsoever, whether known or unknown, whether based on
common law, regulations, statute or a constitutional provision, under state, federal,
or local law, arising out of the allegations made in the Action and that reasonably

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

arise, or could have arisen, out of the facts alleged in the Action as to the FCRA Class Members up to and including the date of final judgment, including, but not limited to, claims arising from the procurement of background checks, motor vehicle reports, reference checks, investigations, and/or consumer reports or investigative consumer reports of any kind on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, *et seq*., and related federal, state, and/or local laws, including but not limited to the California Consumer Credit Reporting Agencies Act, the California Investigative Consumer Reporting Agencies Act, California Business and Professions Code § 17200, *et seq*., whether willful or otherwise, for declaratory, injunctive and equitable relief or restitution, statutory damages, actual and compensatory damages, punitive damages, and costs and attorney's fees. Notwithstanding the foregoing, nothing in the Settlement releases any claims that cannot be released as a matter of law." Settlement at ¶44(a).

The release is narrowed to the facts and claims arising out of the operative complaint. Szamet Decl. ¶15. Where a proposed release "track[s] the breadth of Plaintiff's allegations in the action and the settlement does not release unreleased claims that class members have against defendants," the identical factual predicate doctrine is satisfied and the release is appropriate. *See Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011).

D. The Settlement Administration Process

After the Court granted preliminary approval, the Parties and the Settlement Administrator carried out their duties in connection with administration of the Settlement as set forth in detail in the Stipulation. Szamet Decl. ¶16.

The Court approved the proposed Notice Packet (ECF No. 35) and directed the mailing of the Notice Packet to FCRA Class Members in accordance with the Court's order and the Settlement. *Id*; Szamet Decl. ¶17.

The Settlement Administrator mailed notices to 3,505 FCRA Class Members

on February 5, 2021. Salinas Decl. ¶7. Members of the FCRA Class had until April 9, 2021 to submit a valid request for exclusion or to object.

Based on the declaration from the Settlement Administrator, there is zero (0) objections and one (1) request for exclusion. Salinas Decl. ¶¶9-10.  As of today, there are 3,504 FCRA Class Members.  The favorable reaction of the Class Members is positive and weights in favor of approval. Szamet Decl. ¶18.

## IV.    THE COURT SHOULD ORDER FINAL APPROVAL OF THE SETTLEMENT

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. ("FRCP") 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1100 (9th Cir. 2008). At the same time, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

On a motion for final approval of a class action settlement, the court inquires whether the settlement is "fair, adequate and reasonable," meaning that "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation*, Fourth, § 21.6 at 309 (2004); *see also* Fed. R. Civ. Pro. 23(e)(1)(C); *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982). The fairness inquiry involves the balancing of several factors, including: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, each of these factors weighs in favor of approving the current settlement.

       A.    <u>The Strength of Plaintiff's Case</u>

      Plaintiff alleges that Defendant included extraneous information in its standard FCRA Form administered to FCRA Class Members. Szamet Dec. ¶19. Second, Plaintiff alleges that Defendant failed to obtain proper authorization before obtaining a background check as a result of its allegedly unlawful disclosure form. Szamet Decl. ¶20.

      However, Class Counsel discounted the valuation of the FCRA claims due to Defendant's defenses to liability and certification. Szamet Decl. ¶21.  Plaintiff and his Counsel recognize that there are certainly cognizable risks associated with Plaintiff's claims. Szamet Decl. ¶22.  Importantly, Defendant contends that Plaintiff cannot prove a willful violation of the FCRA, and thus would not be entitled to any statutory damages. 15 U.S.C § 1681n(a)(1). Szamet Decl. ¶23.  This is a standard on which FCRA plaintiffs can lose, even after a successful verdict at trial.  *See Smith v. LexisNexis Screening Solutions, Inc*., 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict based on lack of a willful violation).  Szamet Decl. ¶24. However, Plaintiff believes that he could prove willfulness. Szamet Decl. ¶25; s*ee Syed*, 853 F.3d at 502 ("We also hold that, in light of the clear statutory language that the disclosure document must consist 'solely' of the disclosure, a prospective employer's violation of the FCRA is 'willful' [as a matter of law] when the employer includes terms in addition to the disclosure.").  The issue would have been vigorously contested, posing risk to Plaintiff and the Class.  Szamet Decl. ¶26.

      Defendant also argues that Plaintiff's claim for violating the FCRA's authorization requirement is duplicative of his first FCRA claim involving improper disclosure. *See Milbourne v. JRK Residential Am.*, LLC, No. 3:12CV861, 2016 WL 1071570, at *12 (E.D. Va. Mar. 15, 2016). Szamet Decl. ¶27.  This represents additional risk to the Class.  Szamet Decl. ¶28.

Plaintiff would also argue that his alleged FCRA Class goes back five years, but the FCRA provides two statutes of limitations-one of which only goes back two years-and mandates that each plaintiff be bound by "the earlier of" the two. 15 U.S.C. § 1681p. Szamet Decl. ¶29.  Defendant would certainly take the position that each proposed FCRA Class Member was necessarily aware of the alleged violation at the time he or she signed the background authorization form, and thus each FCRA Class Member who filled out a FCRA disclosure with a liability waiver more than two years before the filing of the complaint would thus be subject to a statute of limitations defense. Szamet Decl. ¶30.  Further, Defendant would argue that the applicability of an individualized statute of limitations defense-which requires a separate inquiry into when each class member subject to the defense personally discovered the alleged violation-means that a class action is not superior to other methods of adjudication. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006) (where statute of limitations defense cannot be resolved on a class-wide basis, class certification is inappropriate).

Nonetheless, Plaintiff is reasonably confident that it could certify an FCRA class that goes back two (2) or five (5) years.  Szamet Decl. ¶31.  Whether each class member had constructive notice of the violation is a common question that can be decided by the Court by looking solely at the allegedly invalid disclosure form. Szamet Decl. ¶32.  There is no need to depose each class member to determine their actual notice. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 421 (5th Cir. 2004), *cert. denied sub nom*, (holding that whether the policyholders had "constructive notice [of their cause of action] is an issue that can be decided on a class-wide basis."). Szamet Decl. ¶33.  Moreover, Plaintiff contends that certifying a class that goes back five years must be possible, otherwise 15 U.S.C. § 1681p(2) would not encourage employers to comply with the FCRA.  Szamet Decl. ¶34. Defendant contends, however, that individualized issues would predominate because Defendant would be entitled to offer additional evidence to prove that each class

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

member knew, or with the exercise of reasonable diligence should have known, the facts necessary to bring the suit when they started work after authorizing a background report. *Ruiz v. Shamrock Foods Co.*, No. 2:17-cv-6017, 2018 WL 5099509, at *6 n.6 (C.D. Cal. Aug. 22, 2018) (dismissing claims on limitations grounds where plaintiffs "were aware by their first day of employment . . . that background reports had issued," since they knew that their offer of employment was conditioned on a successful background check); *Molina v. Roskam Bakery Co.*, No. 09-cv-475, 2011 WL 5979087, at *4-5 (W.D. Mich. Nov. 29, 2011) (denying class certification due to predominance of individualized issues to resolve limitations defense for each class member).

Plaintiff and his Counsel had to weigh all of these risks. Szamet Decl. ¶35. As a result, a significant discount of the maximum potential value of the FCRA claims is appropriate. Szamet Decl. ¶36.

### B. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In making the fairness determination, the Court may also weigh the risk, expense, and complexity of continued litigation against the certainty and immediacy of recovery from a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454, 458 (9th Cir. 2000). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002 & Supp. 2008).

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); see also *4 Newberg on Class Actions* § 11.41 (citing cases). This public policy favoring class action settlements applies with particular force here because the Settlement provides FCRA Class Members substantial, prompt, and efficient relief.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Given the risks outlined above, the issues in this case were complex and the risk for Plaintiff and the FCRA Class Members was high, given the uncertainty. Szamet Decl. ¶37. There is significant expense associated with the class certification process, which the Parties can avoid by entering into the contemplated settlement. Szamet Decl. ¶38. If the Court did eventually certify the class (other than for purposes of settlement as requested below), a class trial involving over 3,000 individuals would require the retention of expensive expert witnesses, the accrual of extensive litigation costs, and a significant time commitment by the parties. Szamet Decl. ¶39. Finally, given the complexity and unsettled nature of the issues in this case, it is likely that any outcome at trial would have resulted in a lengthy and costly appeal. Szamet Decl. ¶40. An appeal would result in further delay for the FCRA Class Members, who are waiting for a resolution. *Ibid*.

### C.    The Risk of Maintaining Class Action Status Through Trial

A class has not been certified in this matter. Class Counsel is reasonably confident that the Court would certify the proposed classes in this case based on the reasons set forth in section V below. Szamet Decl. ¶41. However, Class Counsel had to acknowledge the risks posed by Defendant's foregoing arguments. Szamet Decl. ¶42. Furthermore, decertification is always a possibility. Szamet Decl. ¶43.

### D.    The Amount Offered in Settlement

The FCRA provides that "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. *See* 15 U.S.C. § 1681n.

Based upon estimates of the number of potential class members that Defendant provided during settlement negotiations, Plaintiff determined that the maximum possible exposure for the FCRA claims arising under 15 U.S.C. § 1681(b)(2)(A)(i) and (ii) is $701,000 (3,505 class members x $100 per class member

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

x 2 for each alleged violation). Szamet Decl. ¶44.  The valuation of the maximum exposure above assumes: (1) statutory damages of $100 <u>per</u> violation; (2) the authorization requirement is not duplicative of the disclosure requirement; and (3) no punitive damages are awarded. Szamet Decl. ¶45.

If Plaintiff were to assume that he could establish a willful violation for each of the alleged FCRA claims arising under 15 U.S.C. § 1681(b)(2)(A)(i) and (ii), this amount is $7,010,000 (3,505 class members x $100 per class member x 2 for each alleged violation).  On the other hand, if assuming the alleged violations are deemed duplicative and damages for only one violation were awarded, the maximum possible exposure for the FCRA claims arising under 15 U.S.C. § 1681(b)(2)(A)(i) and (ii) is $350,500 (3,505 class members x $100 per class member).  Szamet Decl. ¶46.

There are also risks and uncertainties with respect to damages.  Szamet Decl. ¶47.  In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation.  Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages. For example, in *Hillson v. Kelly Services*, E.D. Mich. No. 2:15cv10803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily approved a settlement awarding $19 to each class member for an alleged FCRA standalone disclosure violation.  In *Hillson*, the court assumed each individual class member would recover $100 at trial, and observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id.* at *7. Settlements of stand-alone disclosure claims have been approved for substantially less. *E.g., Lengel v. HomeAdvisor, Inc.,* No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure settlements with per person gross recoveries of $33, $40 and $44).

The adequacy of a class action settlement must be judged as "a yielding of

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

absolutes and an abandoning of highest hopes ... . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 634 (citation omitted).   The Settlement is not to be judged against a speculative measure of what may have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Moreover, determining the adequacy of the Settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62.  An additional consideration is that the Settlement provides for payment to now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Likewise, there was a high probability of drawn out litigation and risks the FCRA Settlement Class may not have prevailed. Szamet Decl. ¶48.

Finally, the proposed Settlement is fair because the basis for recovery is the same for each FCRA Class Member.   All individuals comprising the FCRA Settlement Class are eligible to receive individual payments from the Net Settlement Fund based upon the number of FCRA Class Members and which sub-class they fall into.  Szamet Decl. ¶49.  Moreover, each FCRA Class member will be bound by the same release. Szamet Decl. ¶50.

However, given the foregoing risks, Plaintiff believes that the settlement amount of $314,450.00 is adequate, reasonable, and in the best interests of the Settlement Class. Szamet Decl. ¶51.

### E.    The Extent of Discovery Completed, and the Stage of the Proceedings

As outlined above, Class Counsel conducted a thorough investigation into the facts of the claims alleged.  Szamet Decl. ¶52.  The Settlement to settle did not occur until Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

obtained through further litigation.  Szamet Decl. ¶53.  A class action settlement must be informed by sufficient discovery. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).  When a settlement following sufficient discovery and genuine arms-length negotiation is reached, the negotiation is presumed fair. *See Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). Further, The Ninth Circuit has observed that "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Glass v. UBS Fin. Servs.,* 2007 U.S. Dist. LEXIS 8476 at *14 (N.D. Cal. Jan. 27, 2007); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (2000).

Here, discussions between counsel for the Parties, as well as the diligent investigation and evaluation of the claims of Plaintiffs by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. Szamet Decl. ¶54.  The exchange of information and data that occurred provided all counsel with "sufficient information to make an informed decision about settlement."

F.    The Experience and Views of Counsel

In reviewing the opinions of counsel, "great weight" is accorded to the recommendation of the attorneys. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017).  They are the ones who are most closely acquainted with the facts of the underlying litigation. *Id*. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nunez v. BAE Systems San Diego Ship Repair, Inc.*, 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017).

In the present case, the Settlement was negotiated by experienced counsel, who believe that it is fair and reasonable, and in the FCRA Class' best interests. The firms of Kingsley & Kingsley APC and Davtyan Law Firm, Inc. are well versed in class action litigation and have diligently and aggressively pursued this action. Szamet Decl. ¶55. Kingsley & Kingsley, APC is experienced in prosecuting employment litigation, and since 2000 we have focused our practice on wage, hour, and working condition violations. Szamet Decl. ¶¶56-57. Kingsley & Kingsley currently serves as class counsel for dozens of pending class action Actions in Northern, Central, and Southern California. *Id*. A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. *Id*. After factoring in the risks explained above, Class Counsel believes that the proposed Settlement is fair and reasonable.

G.    The Presence of a Governmental Participant

There are no direct governmental participants in this action. Szamet Decl. ¶58.

H.    The Reaction of the Class Members to the Proposed Settlement

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." 5 *Moore's Fed. Practice* § 23.85[2][d] (Matthew Bender 3d ed.).

To date, there is one (1) request to be excluded from the proposed Settlement and zero (0) objections. *Id at* Salinas Decl. ¶¶9-10. Such indicates that the reaction of class members on the whole is positive and weighs in favor of approval. *Id at* Szamet Decl. ¶18.

I.    The Parties Arrived at the Settlement Through Arm's Length Negotiations with the Assistance of a Respected Mediator

As noted by the Ninth Circuit, the eight listed factors analyzed above is "by no means an exhaustive list of relevant considerations." *Officers for Justice*, 688 F.2d at 625. As such, courts often inquire into the procedure by which the settlement was reached.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Here, the Stipulation was reached after an informal exchange of pertinent discovery. Szamet Decl. ¶59. Following this exchange, the parties engaged in a full-day mediation with experienced mediator Tripper Ortman, and settled only after extensive arm's length negotiations. Szamet Decl. ¶60. This procedure weighs in favor of approving the settlement. Szamet Decl. ¶61.

## V. THE COURT SHOULD CERTIFY THE FCRA CLASS

To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following FCRA Class under FRCP 23(b)(3):

> All applicants for employment in the United States for whom Defendant THC-Orange County, LLC procured a consumer report for purposes of employment from September 26, 2014 through July 2, 2019, inclusive. Defendant represents that the FCRA Class contains approximately 3,505 individuals, of which 2,060 were screened between September 26, 2014 and September 25, 2017, inclusive ("5 Year FCRA Sub-Class") and approximately 1,445 persons were screened between September 26, 2017 and July 2, 2019, inclusive ("2 Year FCRA Sub-Class").

Settlement at ¶11.

The Parties agree, but only for purposes of the Settlement, the criteria for certifying a FCRA Class are satisfied. Szamet Decl. ¶62; *See* Settlement, ¶35.

### A.    Plaintiff Maintains That All Four FRCP 23(a) Criteria are Met

**FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, 3,504 individuals comprise the FCRA Class. Szamet Decl. ¶63; Settlement at ¶11. Consequently, numerosity is easily satisfied.

**FRCP 23(a)(2): There are questions of law or fact common to the Class.** The commonality requirement is liberally construed. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

1019 (9th Cir. 1998) (concluding Rule 23(a)(2) is "permissively" construed). The class' claims must share substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" suffices. *Hanlon,* 150 F.3d at 1019.

Under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless ... a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Here, the FCRA Class is all individuals who, between September 26, 2014 and July 2, 2019, in connection with their application for employment with Defendant, completed Defendant's standard form purporting to authorize a consumer report verifying their background and experience. Szamet Decl. ¶64.  Based on these common factual and legal issues, the Parties submit sufficient commonality exists. *Id.*

**FRCP 23(a)(3): Plaintiff's claims is typical of the class' claims. .** As with commonality, the typicality standard is "permissive[ly]" applied. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020). More specifically, it is satisfied when a class representative's claim is "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*

Plaintiff alleges that on or about September 28, 2017, he was required to sign a standardized form labeled "Consumer Disclosure and Authorization Form," provided by Kroll Background America, Inc., a company hired by Defendant to obtain consumer reports verifying employees' background and experience. Szamet Decl. ¶65. According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

information in a required disclosure. Dkt No. 1, ¶21.

The Court should find that Plaintiff's claims are sufficiently typical of the class as a whole. Plaintiff has pled a theory common to the entire class that if proven would not only establish liability as to this claims, but those of all other FCRA Class Members. The Court's task at this stage is to evaluate the allegations and class theory of liability Plaintiff has presented, as opposed to what might transpire were the case to be litigated to a judgment on the merits. *See Quezada v. Loan Center of Cal., Inc.*, 2009 WL 5113506, at \*3 (E.D. Cal. Dec. 18, 2009) ("[T]he court must accept the substantive allegations made in the complaint as true even if the plaintiff may not be able to later prove the allegations.") Here, Plaintiff believes that he has put forth a viable class theory that if proven would establish that he has suffered the same injury as other FCRA Class Members. Other District judges have reached similar conclusions. *See Corcoran v. CVS Health*, 2019 WL 6250972, at \*5 (N.D. Cal. Nov. 22, 2019); *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288, at \*3-4 (N.D. Cal. Feb. 27, 2019).

Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion sufficient typicality exists for settlement purposes. Szamet Decl. ¶66.

**FRCP 23(a)(4): Plaintiff and Class Counsel will fairly and adequately protect the class' interests.** Courts have interpreted this requirement as posing two questions: whether the class representative and his counsel (1) have conflicts of interest with putative class members, and (2) will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Plaintiff and Class Counsel do not have interests antagonistic to those of the FCRA Class. Szamet Decl. ¶67. To the contrary, Plaintiff shares the same interest—*i.e.*, recovering damages resulting from alleged violations of Defendant's FCRA obligations. *Id.* Moreover, Class Counsel have extensive experience prosecuting similar class actions. Szamet Decl. ¶68 and ¶¶56-57. Kingsley & Kingsley is experienced in prosecuting

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class actions. *Id.* Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California. *Id.* A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. Thus, Plaintiff and Class Counsel are adequate representatives for the FCRA Class. The firm has diligently and aggressively pursued this action. After factoring in the risks discussed herein, Class Counsel believes that the proposed settlement is fair and reasonable.

Moreover, Plaintiff is an adequate class representative and does not have a conflict of interest. Based on the recovery that Plaintiff has obtained for the class as a whole, the record before the Court supports a finding that Plaintiff adequately represents the interests of the FCRA Class.

B.   The FRCP 23(b)(3) Criteria are Met

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions affecting individual members of the proposed class, and (2) a class action is a superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). The Settlement easily meets these criteria.

**The predominance requirement is met.** Predominance "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

Predominance is readily met because, as in numerous other class actions,

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiff's claim is premised on his allegation Defendant maintained a uniform policy of providing the FCRA Class with a standardized form facially violating the FCRA. (Dckt. No. 1, ¶¶19-21; Szamet Decl. ¶69.) Plaintiff's claim is based on factual and legal questions about Defendant's disclosure and authorization documents that are not only common to the FCRA Class, but predominate under FRCP 23 (e). *Id.* As such, Plaintiff contends that these aspects of the case strongly support a finding that the predominance requirement is satisfied. Szamet Decl. ¶70.

For the reasons discussed in the typicality section above, Plaintiff believes that he has put forth a viable class theory that if proven would establish that he has suffered the same injury as other FCRA Class Members.  If the Court finds that Defendant's FCRA disclosure is not compliant because it contains extraneous information, then Plaintiff submits that the Court must also necessarily find that the disclosure did not put class members on notice that a background report was to be procured or that class members were authorizing the procurement of such a report. Common issues therefore predominate over individual ones, even as to the statute of limitations issue.

**Superiority is met.** Whether a class action is a superior method of adjudicating a controversy involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023. The circumstances here are comparable with those involving the Las Vegas Sands' former casino employees who sought damages for their employer's failure to provide a statutorily required 60-day notice before closure. When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, superiority is "easily satisfied." *Id.* For purposes of approving the Settlement only, the Parties submit superiority is equally satisfied. Szamet Decl. ¶71.

## VI.    ENHANCEMENT TO PLAINTIFF

Plaintiff's Counsel request an enhancement of $5,000.00 to the named Plaintiff Yuriy Bouzelev for his work on behalf of the FCRA Class. Szamet Decl. ¶72. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga 2001) (internal quotations and citations omitted); *see also Van Vranken v. Atlantic Richfiled Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). In *Coca-Cola*, the Court approved service awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also*, e.g. *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 participation award to plaintiffs); *Glass v. UBS Financial Services, Inc.*, Case No. C-06-4068 MMC, 2007 WL 227862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,00 enhancement to each named plaintiff).

Mr. Bouzelev is an adequate Class Representatives because he has diligently, adequately, and fairly represented the FCRA Class and have always maintained the best interest of the FCRA Class while performing his Class Representative duties. *see* the concurrently filed Declaration of Yuriy Bouzelev ("Bouzelev Decl.") ¶¶3-11.

Here, Class Counsel requests an enhancement for Plaintiff's valiant effort in stepping forward to pursue this claim on behalf of himself and others and for his time expended in this matter. Szamet Decl. ¶73. The time spent by Plaintiff includes

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

providing information to Class Counsel regarding the claims at issue, compiling documents, meeting with his attorneys to discuss the status of the case, the theories of liability, and responding promptly to Class Counsel's communications regarding settlement. Szamet Decl. ¶74. Thus, in addition to the sums paid to FCRA Class Members, Class Counsel requests final approval of a proposed litigation enhancement in the amount of $5,000.00, to be paid from the Gross Settlement Amount. Szamet Decl. ¶75; Bouzelev Decl. ¶11. As set forth in the Stipulation, Plaintiff will also be entering into a general release by all FCRA Class members. Szamet Decl. ¶76; *See* Settlement ¶44(b).

Class Counsel considers this to be a fair and reasonable enhancement. Szamet Decl. ¶77. The enhancement takes into consideration the time, effort, and expense incurred by Plaintiff in coming forward to litigate this matter on behalf of all FCRA Class Members. Szamet Decl. ¶78.

## VII. CONCLUSION

The Settlement is fair and reasonable and all of the requirements for final approval are met.  Plaintiff therefore requests that the Court grant this motion and enter an order: (1) granting Final approval of the Settlement; (2) certifying the FCRA Class; (3) awarding an incentive payment of $5,000.00 to the named Plaintiff; (4) awarding attorneys' fees and costs in the amount detailed in the Motion for Attorneys' Fees and Costs filed on March 19, 2021; (5) awarding $20,000.00 to Simpluris, Inc. for administration; and (6) entering judgment in the case. The Parties also are submitting a stipulation seeking a consent order affirming that the disclosure forms utilized by Defendant from at least July 3, 2019 forward comply with the FCRA's disclosure requirements.

DATED: April 15, 2021                    KINGSLEY & KINGSLEY, APC


By:  */s/* Kelsey M. Szamet
_____
Kelsey M. Szamet
Attorney for Plaintiff YURIY BOUZELEV
and the proposed class

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**